IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

TERESA WEATHERLY, )
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff, 　　　　　　　) 　Civil No. 04-6233-KI
　　　　　　　　　　　　　　　　　　　　　)
　　vs. 　　　　　　　　　　　　　　　　) 　OPINION
　　　　　　　　　　　　　　　　　　　　　)
COMMISSIONER, SOCIAL SECURITY )
ADMINISTRATION, 　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant. 　　　　　　　)

　　　　Brent Wells
　　　　Kathryn Tassinari
　　　　Cram Harder Wells & Baron
　　　　474 Willamette Street, Suite 200
　　　　Eugene, Oregon  97401

　　　　　　　Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
Craig J. Casey
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Leisa A. Wolf
Lucille G. Meis
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104

        Attorneys for Defendant

KING, Judge:

Plaintiff Teresa Weatherly brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I reverse the decision of the Commissioner.

## BACKGROUND

Weatherly applied for DIB on September 17, 1998. The claim was denied initially and on reconsideration. After a timely request for a hearing, Weatherly, represented by counsel, appeared before an Administrative Law Judge ("ALJ") on November 19, 1999. The ALJ postponed the proceedings to obtain additional medical records and to have Weatherly examined by a consultative psychologist. Weatherly testified at a subsequent hearing held on May 23, 2000.

On July 26, 2000, the ALJ issued a decision finding Weatherly was not disabled prior to her date last insured and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

Weatherly appealed the decision to the District Court. In an opinion and order dated July 26, 2002, the action was remanded to the Commissioner for further administrative proceedings, including testimony of a medical expert to determine the onset date of disability.

Pursuant to the District Court order, another hearing was held on December 16, 2003. Both Weatherly and Robert Davis, Ph.D., a medical expert, testified at the hearing. On March 26, 2004, the ALJ issued a decision finding Weatherly was not disabled under the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

# FACTS

## I. ALJ's Decision

The ALJ found Weatherly was suffering from post traumatic stress disorder ("PTSD"), depression, and fibromyalgia, but that her allegations regarding her limitations were not entirely credible. The ALJ did not afford full weight to the opinions of Weatherly's treating physicians or the Board of Veterans Affairs ("VA") determination regarding the severity of Weatherly's impairments. As of December 31, 1997, Weatherly was able to lift twenty pounds and sit, stand and walk six hours a day each. She was limited to simple routine tasks and only able to tolerate limited public contact or interactions with coworkers. The ALJ found Weatherly qualified for disability as of August 1, 2000. Based on her determination of Weatherly's residual functional capacity and the prior testimony of a vocational expert, the ALJ concluded that Weatherly could not return to her former work but could work as an office helper, assistant photo finisher, or optical goods worker, and thus was not disabled under the Act.

## II. Weatherly's History

Weatherly, who was forty-nine at the time of the second hearing, claims to have been disabled since October 1, 1997, due to PTSD, depression, and fibromyalgia. Weatherly sustained a back injury in 1990 while working for UPS. The following year she was in a motor vehicle accident. After the accident Weatherly began treating with a psychiatrist. Weatherly had already been on Trazadone for ten years because of depression. In 1994, Weatherly was examined by Dr. Calderon, a psychiatrist at the Veterans Affairs Medical Center ("VAMC"). Dr. Calderon diagnosed Weatherly with PTSD, non-combat type, after she revealed she had been raped while in the Navy. Weatherly was diagnosed with fibromyalgia in 1995.

Weatherly testified she stopped working in September 1997. She explained she has trouble doing normal things, such as grocery shopping, because of anxiety and panic attacks. Weatherly states she has severe panic attacks three to four times a month, but will feel nervousness several times a week, sometimes several times a day. She is on several prescription medications, for pain, anxiety, and depression. Weatherly also testified that she has trouble sleeping. She left school during the eleventh grade, but later received her GED, an associate degree, and a bachelor's degree. Weatherly's work experience includes work as a realtor, UPS delivery driver, mill worker, laborer, and day care center worker. Weatherly served in the U.S. Navy from April 1974 until July 1979. Weatherly has a history of alcohol abuse, but has been sober since 1991.

## DISCUSSION

I.  Medical Evidence

Dr. Knee, a treating psychiatrist, found Weatherly to be disabled beginning October 1997, the point at which Weatherly states she stopped working. The ALJ determined his opinion could not be afforded full weight because his opinion was inconsistent with medical records, was not found persuasive by his employer, was not supported by evidence, and was found to be unsupported by the medical expert. Mary Gunn, a treating therapist, and Dr. Oscar Yapur also expressed their opinion that Weatherly was not able to perform a full time job prior to December 31, 1997. The ALJ did not find these opinions persuasive. The Board of Veteran's Affairs issued a decision on May 1, 2001, finding Weatherly was entitled to a 100% disability rating after December 30, 1997. The ALJ did not afford great weight to the VA determination due to the absence of findings by the VA which would support a Social Security determination and in light

of the overall inconsistency with the record. Dr. Davis, the medical expert, testified his opinion was that Weatherly was not disabled as of December 31, 1997. He found her disabled as of Summer 2000.

    A.    <u>Dr. Knee</u>

Weatherly contends the ALJ improperly rejected the testimony of Dr. Knee, a treating psychiatrist. The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. <u>Lester</u>, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. <u>Id.</u> at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. <u>Morgan v. Commissioner of Social Security Administration</u>, 169 F.3d 595, 600 (9th Cir. 1999).

Dr. Knee first treated Weatherly in August 1998. Between September 1998 and June 1999, Dr. Knee wrote three letters endorsing Weatherly's disability as beginning in October 1997. The ALJ found Dr. Knee's opinion to be inconsistent with Weatherly's medical records. The ALJ

also found Dr. Knee's impression that Weatherly has been too disabled to work since October 1997 was contradicted by Weatherly's own statements and her continued work activity. The ALJ determined that Dr. Knee's opinion was not found persuasive by his employer, the Veteran's Administration. The ALJ also found Dr. Knee did not give supporting evidence for his opinion and that it was not supported by contemporaneous observation. The medical expert, Dr. Davis, also found the opinion to be unsupported. Therefore, the ALJ found full weight could not be afforded Dr. Knee's opinion.

In the letters Dr. Knee wrote, he provided Weatherly's diagnoses as well as some of her history, including employment history. In all three letters Dr. Knee stated that Weatherly is currently unemployable and has not been able to maintain full employment for years, with her last part-time employment ceasing in October 1997 due to severe depression. The ALJ stated Dr. Knee's opinion was not consistent with medical records, but the records show that Weatherly suffered from depression for years, culminating on December 30, 1997, when Weatherly reported feeling suicidal and inquired about inpatient treatment. Dr. Knee's opinion was not inconsistent with Weatherly's medical records.

The ALJ found Dr. Knee's opinion unpersuasive because it was contradicted by Weatherly's own statements and her continued work activity. Weatherly testified to being unable to work after October 1997. The only money she made in real estate in 1997 was from the sale of a nephew's house. Weatherly testified that after October 1997 her activities were reduced. The ALJ found that Weatherly had obtained her contractor's license and was building a house for clients after October 1997. Weatherly testified that she did have a contractor's license but was not actually working on the house, the clients were building it themselves. After Weatherly lost

her real estate license she tried to regain it, including asking people to write letters on her behalf. An attempt at regaining her license does not prove she was able to work, only that she wanted to. Therefore, her statements and attempts at continuing to work do not contradict Dr. Knee's opinion.

The ALJ also stated the VA found Dr. Knee's opinion unpersuasive as to the disability date. The VA reviewed the case several times. Initially the VA denied that Weatherly's PTSD was related to her time in the service, but the VA later altered this determination. The VA found Weatherly to be only 70% disabled between October and December 30, 1997, and 100% disabled as of December 30, 1997. Dr. Knee's opinion is that Weatherly was disabled as of October 1997. Even if Dr. Knee's onset date was not accepted, the VA's decision supports his finding that Weatherly was disabled prior to her date last insured.

The ALJ relied on the medical expert, Dr. Davis, and his findings that Dr. Knee's opinion was unpersuasive. Dr. Davis found Weatherly was not disabled as of December 30, 1997, but when questioned he believed she met the listing for disability when she entered the in-patient facility on March 3, 1998. In making his determination, Dr. Davis took into account Dr. Knee's analysis that Weatherly was unemployable but that she had recently worked. Dr. Davis considered the treatment notes and reports of Dr. Knee and Mary Gunn, a treating therapist, and found them not fully credible because he believed they had stepped over the line and were advocating. Dr. Davis did not substantiate his opinion that Dr. Knee advocated for Weatherly. Furthermore, neither Dr. Davis nor Dr. Knee's examinations were contemporaneous. Dr. Davis' opinion was based on the record and the questions he asked Weatherly at the hearing while Dr. Knee's examination occurred after Weatherly's last insured date. Therefore, as a treating doctor,

Dr. Knee's opinion should be given greater weight than a non-treating or non-examining doctor, such as Dr. Davis, unless there is substantial evidence to reject his opinion. Dr. Davis' opinion itself is not substantial evidence to reject Dr. Knee's opinion.

In order to reject Dr. Knee's opinion, there needs to be substantial evidence to the contrary. The opinion of a nonexamining, testifying medical advisor, such as Dr. Davis, may serve as substantial evidence when supported by evidence in the record. However, here there is evidence in the record that contradicts Dr. Davis' opinion that Weatherly was not disabled as of December 30, 1997. Therefore, Dr. Davis' opinion alone is not substantial evidence to reject the opinion of Dr. Knee, a treating psychiatrist.

### B. Mary Gunn

Weatherly claims the ALJ improperly rejected the testimony of Gunn, Weatherly's treating therapist. While a treating therapist is not listed as an acceptable medical source, 20 C.F.R. § 404.1513(a), evidence from therapists may be used to show the severity of a claimant's impairments and how it affects her ability to work. 20 C.F.R. § 404.1513(d). Gunn's testimony must, at the least, be given the consideration of a lay witness. Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless she gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Gunn and Dr. Yapur wrote a letter on December 15, 2003, expressing their opinion that Weatherly was unable to perform a full time job for several years prior to December 30, 1997,

and that she was totally disabled and unemployable after October 1997. The ALJ relied on Dr. Davis' opinion that Gunn was acting as an advocate for benefits rather than making an impartial evaluation. Gunn included in the record a listing of symptoms that would support a 100% disability award. The ALJ found that these symptoms do not appear of record and are contrary to the claimant's working even part-time as a realtor and contractor. The listing utilized was a supplement to Title 38, Part 4 Schedule for Rating Disabilities, Veterans Benefits Administration. The VA found Weatherly to be 100% disabled, therefore these symptoms must be present because the VA utilizes this listing in their determination.

In addition, the record reveals a lengthy professional relationship between Gunn and Weatherly; Gunn began working with her in 1992. The records contain treatment records from Gunn as well as a Social and Industrial Survey she completed on Weatherly. Dr. Davis did not give any evidence for his conclusion that Gunn was advocating for Weatherly, and I find none. Accordingly, I find the ALJ improperly discredited Gunn's opinion.

    C.    <u>VA Determination</u>

Weatherly argues that the ALJ improperly discredited the VA's determination of disability. A VA disability rating is entitled to great evidentiary weight in a Social Security proceeding. <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002). Since the VA and SSA criteria for determining disability are not identical, an ALJ may give less weight to a VA rating decision by giving persuasive, specific, and valid reasons for doing so that are supported by the record. <u>Id.</u>

The ALJ stated the VA decision is not entitled to great weight due to the absence of findings by the VA that would support a social security determination and in light of the overall

inconsistency with the record before the ALJ. The VA ultimately found Weatherly was fully disabled as of December 30, 1997, but the ALJ found it unclear how this determination was reached. The ALJ stated that the VA acknowledged but did not address Weatherly's continued work activity. The VA also did not make any effort to determine Weatherly's residual functional capacity or consider whether work was available for her considering her limitations, as are required for a finding of disability under Social Security rules. The ALJ also pointed out that on December 30, 1997, Weatherly expressed increased difficulty, but no medication changes were made and no hospitalization was required. Therefore, the ALJ did not believe that Weatherly's medical condition warranted a 30% increase in PTSD symptoms in a single day. Finally, the ALJ found the Board erred in stating that the PTSD was due to rapes when the original PTSD award was made on a possible service connected assault and robbery and found the rape reports to be untrue.

It is true that initially the VA denied PTSD and found the rapes to be untrue. However, on several occasions after that the VA acknowledged the rapes occurred and determined the PTSD resulted from the in-service rapes. Ultimately, the VA found Weatherly was entitled to a total disability rating effective December 30, 1997 for PTSD, the diagnosis of which is related to two rapes and two personal assaults that occurred while in the military. On December 30, 1997, Weatherly mentioned things were not going well for her and that she is "more suicidal today than she ever has been." Tr. 287. She also asked about the possibility of inpatient treatment. The VA found this exchange showed her condition had deteriorated on this date, enough to increase her from a 70% disability to 100% disability. The VA found the evidence did not show that symptoms worsened prior to December 30, 1997, to an extent that Weatherly was incapable of

working. Therefore, a grant of total disability prior to that date was not warranted. The disability determination made by the VA is supported by the record, and thus should have been given great evidentiary weight. I find the ALJ erred in failing to credit the VA decision.

II.     Credibility Determination

Weatherly contends the ALJ improperly rejected her testimony. When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

The ALJ found Weatherly had given a pattern of misleading statements. First, the ALJ found that Weatherly alleged she stopped working in October 1997, but that she held herself out to the community and her real estate broker as a real estate agent until March 1998. While she

working. Therefore, a grant of total disability prior to that date was not warranted. The disability determination made by the VA is supported by the record, and thus should have been given great evidentiary weight. I find the ALJ erred in failing to credit the VA decision.

II.     Credibility Determination

Weatherly contends the ALJ improperly rejected her testimony. When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

The ALJ found Weatherly had given a pattern of misleading statements. First, the ALJ found that Weatherly alleged she stopped working in October 1997, but that she held herself out to the community and her real estate broker as a real estate agent until March 1998. While she

may have attempted to continue working at that time, she was not receiving any income. After October 1, 1997, Weatherly only worked a few hours each day assisting clients who were building a house. Her work was significantly reduced and thus not substantial. Weatherly tried to regain her real estate license in January 1998, after her date of last insured. The VA sent a supporting letter. The ALJ found this to mean that both Weatherly and the VA still considered her capable of working. Although Weatherly did try to regain her real estate license, that does not show she was able to perform substantial gainful activity, only that she wanted to.

The ALJ also found that Weatherly's history of alcohol abuse did not remain in remission as she had alleged. On March 4, 1998, Weatherly admitted to consuming alcohol several days previously, although she had reported earlier that she had not consumed alcohol since 1991. This is clearly an inconsistency, but one discrepancy does not require rejection of all testimony. Weatherly admitted to drinking when being admitted to the Menlo Park VA Women's Trauma Recovery Program. When Weatherly was discharged from the program, alcohol abuse was not noted as being a serious problem for her.

Because of these unsupported findings, I conclude the ALJ failed to state clear and specific reasons for rejecting Weatherly's testimony and, thus, improperly rejected it.

III.  Remedy

The last issue is whether I should make a finding of disability or whether the case must be remanded for further proceedings.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons

for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

The ALJ failed to give sufficient reasons for not crediting the opinions of Dr. Knee and Gunn. Also, the ALJ failed to give sufficient reasons for not giving great weight to the determination of disability made by the Veterans Administration. Everyone appears to agree that Weatherly was disabled as of March 1998, after her last date of insured. The ALJ wrongly discounted evidence demonstrating that Weatherly was disabled as of December 30, 1997. Therefore, I will award benefits.

## CONCLUSION

Based on the record, the decision of the Commissioner is reversed. The case is remanded for a finding of disability.

Dated this <u>   1st    </u> day of August, 2005.

<u>   /s/ Garr M. King             </u>
Garr M. King
United States District Judge